Good morning, Your Honor. Paul Jasper appearing on behalf of the petitioner. I'd like to begin by thanking the INS and in Solis-Espinosa v. Gonzales, their controlling authority in this matter and they compel a reversal of the BIA's decision that the petitioner in this case was not a citizen. In Solis-Espinosa and scales the Ninth Circuit held that under 8 U.S.C. Section 1401-A-7 that a child could derive citizenship from a step-parent through legitimation even though neither of the child's biological parents were citizens. Likewise in this case the petition derived citizenship from his step-father. The BIA distinguished scales and Solis-Espinosa on the ground that in each of those cases at the time of the petitioner's birth a citizen step-parent and the non-citizen biological parent were married. In this case... That's not true in this case. Correct. In this case, your honor, that marriage didn't happen until the petitioner was 7 years of age. There is no marriage at birth requirement. First, beginning with the relevant section, Section 1401-A-7 and Section 1409, which were the two sections at issue in those cases, neither of them have any reference to marriage whatsoever. In fact, in Section 1409 it specifically indicates that its provisions are applicable only to a child born out of wedlock, which clearly indicates there's no marriage requirement. Moreover, neither Solis-Espinosa nor scales pin their decisions on a marriage at birth. Rather, they focused on legitimation. The only source of a marriage at birth requirement is the peculiar legitimation statute at issue in scales. In scales, the petitioner was domiciled in Washington, so the relevant state legitimation statute was the Washington statute, which had a requirement for legitimation that there be a marriage at birth. In Solis-Espinosa by contrast, the petitioner was domiciled in California, which is the same in this case. And under the California statute, there is no marriage at birth requirement. Rather, there are two main requirements, which are that the purported father publicly acknowledge the child as his own and that the purported father receive the child into his home as his own child. There is no requirement of marriage at birth. And because the petitioner in this case is subject to the California legitimation statute and not the Washington legitimation statute, there is no marriage at birth requirement. Because moreover, in this case, there is no factual dispute whatsoever, neither in terms of the holdings below nor the contentions of the respondent, that absent this issue with respect to the marriage at birth requirement, that the petitioner otherwise satisfies the requirements of the legitimation statute. From the age of six months, the petitioner has been a member of the family. Since that time, the parents have gone married. He now at this point has six different half-brothers and sisters. All of those children are citizens. The stepmother in 1981 was conferred citizenship. And the practical import at this point of denying this man citizenship is that he will be the only member of a nine-person family that cannot stay here in the United States. I want to touch on a basis which did not underlie the underlying decision, but is highlighted in Respondent's brief, which is the erroneous contention that under California law, a stepfather cannot legitimate a child. There is no California case under California Civil Code Section 230, which was applicable from 1872 to 1975, which discusses the issue of whether or not a stepfather can legitimate a child. The Respondent cites three separate cases, the Blythe v. Ayers case, the Estate of Lund case, and the Colpitt v. Cheatham case. None of those three cases consider whether or not a stepfather can legitimate. Rather, each one of those cases considers whether or not the biological illegitimate child can inherit from their deceased father's estate. There is a brief discussion in dicta in those cases which talks about legitimation versus adoption. It's important to understand the context. If you look at California Civil Code Section 230, it uses the word adopts, that the purported father who meets the requirements of a legitimation statute thereby adopts the child. And the focus in that case was simply clarifying that in addition to the two requirements of legitimation, there was no requirement of a formal adoption. Moreover, there is significant discussion of this issue with respect to the successor statute to Section 230, which is codified at the California Family Code Section 7611D. Under the successor statute, the California courts have had the opportunity on multiple occasions to consider this very issue, and on all occasions have determined, in no instance, have determined that the status as a stepfather as opposed to a biological father precludes legitimation. In N. Ray Nicholas H., in fact, the purported father admitted that he was not the biological father and nevertheless was allowed to legitimate. In the other two cases, there was a competing purported father who claimed to be the biological father. And in fact, in both of those cases, the court held that the non-biological purported father had legitimated the child. So clearly, in the only cases that have considered this issue, the status as a stepfather does not bar legitimation. Moreover, I want to focus in Section 230 on the use of the word adopts. The use of the word adopts, in addition to the use of the word legitimate in that section, clearly implies that not only a biological father but a non-biological father can affect that adoption. Finally, I just want to talk about the policy of this matter and point out that this is not a case that if you decide to reverse is going to open up the floodgates for citizenship. The underlying concern under the INA is that there is a bona fide familial relationship. The concern, which I think probably underscored a case brought up in the Respondents' Brief, the Fifth Circuit's Marquez-Marquez case, is that where you have an adoption as opposed to a legitimation, that you don't have a sufficient assurance that there is a bona fide relationship. You can imagine a situation in which an adoption occurred on the child's 17th birthday essentially as a sham transaction in order for the purported citizen to gain citizenship. Legitimation has built-in safeguards that there is the type of bona fide relationship that is required. You've got to have a father who can legitimately hold this child out as his natural child publicly, has brought them into the home. The idea that somebody could come along at age 16 or 17 and satisfy the requirements of legitimation, I think, is without merit. In addition, there is an important distinction between legitimation and adoption. With respect to legitimation, there is a retrospective effect. That is not the case in adoption. What underlies these cases is a fiction in which under 1401A7, the child has to be born of parents, one of which is a citizen of the United States. Clearly in these cases, taking the natural interpretation, there is no parent that was born in the United States and neither solus espinosa or scales. The fiction is that through the legitimation under the relevant state statute, that child is treated as if they were born to that parent from birth and thereby satisfy that statute. Under the adoption line of cases, that's not going to be the case. There's not the safeguards and there's not the retrospective application. Thank you, counsel. We'll hear from the government. May it please this Court. My name is Andrew Oliveira. On behalf of the Respondent, Attorney General Michael McCasey, Your Honor, this case is quite simple. Martinez Madera was born out of wedlock in Mexico to two citizens and nationals of Mexico. Some six months after his birth, his mother began a relationship with a United States citizen. They were subsequently married in 1960, seven years after his birth. Five years after that, the citizen petitioned for Martinez Madera and his family to come over as lawful permanent residents. Petitioner then lived in the United States as a lawful permanent resident up until this point. In 1996, Petitioner was convicted in California of attempted murder and served a sentence for seven years plus enhancements. Based on that conviction, he was brought to the attention of the now Department of Homeland Security, who put him in removal proceedings for being an aggravated felon. Only at that time, Petitioner raised his claim that he was in fact a United States citizen. Both the immigration judge and the board denied that claim and relied on this Court's precedent in that to get derivative citizenship from a stepparent, the citizen's stepparent and the natural parent must be married at the time of the birth. There's no case that really says that directly, though. Actually, in Scales, they said that the fact that the parents were married at the time of the birth. Well, that was a fact in Scales. I mean, it seems to me that you do look at the state statute on legitimation. Correct. And in Scales So under the California statute, which applies here, explain to me why there isn't a claim that a stepparent can legitimize a son or daughter who was not, who was, didn't meet the criteria that you just described. Well, first Raised the child, it seems to me under California law, you raise the child as your own, you from, essentially from birth. Whether or not you're married or not doesn't really make much difference, does it? Well, the California statute, former civil code section 230, one, it states the father of an illegitimate child. And furthermore, in Blythe, which interpreted 230, it stated that it wanted to clarify whether or not the statute was an adoption statute or a legitimation statute, and it concluded that it was a legitimation statute. Right. The other side, Ways of Life, has cited as a case that's 115 years old and claims that the language that you're citing is just dicked and we shouldn't pay any attention to it. Well, two points. The fact that it was decided in 1890-something, I don't think bears on whether or not it's good law. I think, as we all know, that Marbury v. Madison is quite old and is still good law. And furthermore, in determining whether or not, in that case, the child could inherit from a father, they had to determine whether or not she was legitimated and what that statute meant. So they interpreted the statute to say that legitimation deals with a blood relationship. The natural father is legitimating his child. Adoption, as they use the term, strangers in blood, which is exactly the case we have here. The stepfather who's reporting to legitimate is a stranger in blood, and therefore, under California civil code 230, he cannot legitimate. Should we certify this question to the California Supreme Court for a definitive answer? I don't think that is necessary, Your Honor, given what the California Supreme Court held in Blythe. They clearly stated when they interpreted the statute that legitimation is for a blood relationship only. Is 230 controlling? Yes, because it was the statute in effect at the time that Petitioner was born. So you started to make a distinction, I thought, on the basis that the statute said father and not mother. Are you really relying on that? Not father versus mother, but father versus stepfather. It clearly relates to the biological natural father, because the difference in scales was that that Washington statute said that there was a presumption of paternity if the mother and the father were married at the time of birth. Here, without that presumption, though, it's just the father. It states the father of an illegitimate child, and it clearly relates to only the biological father. Petitioners raised the Solis-Espinosa case. That is also factually distinguishable from this case as well, because in Solis, the natural father legitimized the child, not the stepparent. In that case, the stepparent was the mother, and this Court held that because the natural father had legitimated the child, he derived the citizenship of the stepparent. So again, the key in Solis, as in scales, was the fact that the natural parent and the citizen stepparent were married at the time of birth. And because under California law, petitioner could not be legitimated. Why should that make any difference at all, in terms of just a logical look at how the statute is supposed to operate? What's the point? The point of differentiating between in and out of wedlock, Your Honor, is that? Yeah. Well, Congress has a basis for determining who can and cannot get citizenship from birth, and they delegated that response, or they... Right, but I guess my question was more, if California chooses to say you can have a non-pro-toc, essentially, legitimation, what is that, what's wrong with that? Sorry, Your Honor, I'm not quite, I mean, what's... I mean, in California you can legitimize, even though, I mean, the point is you legitimize somebody that might be considered born out of wedlock, right? So if you're relating back to that, not pro-toc, what's wrong with that? Ultimately, though, it's because, as Congress said, that they set up these rules... But each state, we all know that each state determines how those rules are going to be applied. So if California chooses to apply the rules in that fashion, there's nothing wrong with that, is there? No. But as California has applied those rules by limiting it only to the natural father, as they stated in Blythe. So it all comes down to Blythe? Yes, as that... So why not certify? I mean, that case is old, maybe it's good law, maybe not. Well, however, this Court is required to take the interpretation from the California Supreme Court, and they clearly interpreted... And then we just proceed on. I understand that. But I don't think there is a question of law here in that... Well, I mean, the only important federalism issue is this. If we start tinkering with how California views inheritance laws, that has some implication that goes beyond this case. It's not simply a small immigration matter. It's a matter of how domestic relations laws apply in California. Well, that is correct, Your Honor. But they have, in Blythe, expressly held how former Civil Code 230 is to be interpreted. And that interpretation is controlling. And they said that only a natural father can legitimate. If there are no other questions, Your Honor, I cede my counsel. Thank you, counsel. What do you do with the 1892 case? Well, Your Honor, the Respondent's depiction of Blythe is just inaccurate. It's an entirely inapposite case. It does not deal with the issue of a legitimation by a stepfather at all. What is at issue in that case is whether the biological daughter of her biological father, an illegitimate biological daughter, inherits. Well, so what you're saying is you're saying that the language that the other side relies on is just dicta, right? It's not only dicta, but considered in its context, it's pretty clear what it's getting at. It is defining what is not the low point of what's required. What's going on in Blythe is they're trying to figure out whether or not the biological father in that case met the two requirements, his daughter, and whether or not he brought him into the home. The problem in Blythe was they were in entirely different countries. There were significant deficiencies in meeting those requirements. The whole thrust of that case is discussing that. And, in fact, it was an extremely flexible decision in determining that, in fact, that biological father had legitimated in that case. They really bent over backwards. I mean, it's very clear from all three of the cases cited by Respondent that the policy in California is extremely flexible and really bends over backwards to try and find legitimation because of the obvious hardship in the event that that doesn't occur. And, moreover, the context is simply at the outset of the case to clarify a formal adoption is not required. We need to talk about the two requirements that I've discussed repeatedly thus far. Do you have any views on certification one way or the other? Well, I'm not entirely sure what's intended by certification. I don't think Blythe is a helpful decision. I don't think Blythe would be an appropriate decision to certify. No, no, we just certify the legal question. And the California Supreme Court could decide one way or the other. I suppose the argument against certification would be we're dealing with a former statute. But, otherwise, we're tinkering with domestic relations law in California. Well, I think the reality, obviously, is that statute is only going to apply through 1975. That's number one. But, number two, I think if we think about technology for a second, from 1872 to 1975, there was no reliable ability to determine whether or not a parent, a purported father, was a biological father or not. I mean, that doesn't really come out until that ability to distinguish between the two doesn't come into play until the time period that the successor statute is in play. And as soon as that question has been brought before the court repeatedly, the California court has focused on the familial relationship and has not relied on the type of very technical distinctions that Respondent is trying to put forward here. The quality is, is this a real family or not? In fact, I really think it's important to refocus on Solis Espinoza because it's an interesting case because Respondent is correct that the focus is on whether or not the natural father legitimated, at least initially in that decision. But the interesting thing is, under the fiction, it's the stepmother in that case who was the one who had the citizenship. So the stepmother had to be brought in. Well, that's done in two ways in that case. The first is that under Section 230, to the extent that there is a marriage between the purported father and the mother, the mother has to consent. The practical fact is that both parties have to be involved in the legitimation because the mother, just as much as the father, has to be consenting to take that child into the home and treat that child as her own. So really what I think they're doing in Solis Espinoza is construing Section 230 as requiring that both parents, in a situation as in this case where the parents are married, have to be involved in the legitimation process. In fact, I just want to read the very end of that decision. After they've discussed the retrospective effect of legitimation in that case, they say, That result is logical. In every practical sense, Cruz Dominguez, who is the mother, was petitioner's mother and he was her son. There is no good reason to treat petitioner otherwise. Public policy supports recognition and maintenance of a family unit. The Immigration and Nationality Act was intended to keep families together. It should be construed in favor of family units and the acceptance or responsibility of family members. It cites the Ninth Circuit case of Koleski discussing the humane purpose of the INA and noting that a strict interpretation of the act, including any arbitrary distinction between legitimate and illegitimate children, would detract from the purpose of the act, which is to prevent continued separation of families. Where's your client now? Our client is in a detention center at this point. He's served a 10-year sentence. He has performed admirably while in prison. He's had no problems. He's been a model worker. This was his only incident before that. Ten years into his, I believe it was one or two weeks short of his 10-year sentence, he learned for the first time that rather than getting his freedom and be able to return to his family of eight other members, he was instead going to be transferred to a detention center while he awaited determination as to whether or not he was going to be deported. For this crime he's already served 10 years on, based on a contention that despite the multitude of factual and equitable reasons why he should be treated as a citizen of this country, he had to go back into a detention area while he awaits the resolution of this case. The one negative, of course, of certifying this decision, in addition to the fact that I really think Anselo Cispinoza, the Ninth Circuit, is speaking very clearly, I also think that the California courts have spoken very clearly as soon as the technology really allowed for a distinction between a biological and non-biological parent to say, look, we're not focusing on the technical details. We're focusing on the reality that it's a bona fide familial relationship and we're doing everything we can to prevent the separation of families that contain both immigrants and citizens. This family is nine members, eight citizens, and Mr. Martinez Madera. The practical impact of denying him citizenship is exactly the opposite of the purpose of the statute. And I gather your position on Bly is that if we construe it properly it helps you? Correct. Our position is that the dicta with respect to adoption, which is obviously not related to the holding, but it implies that there's an importance to that word adopts. That word adopts in Section 230, by any natural interpretation, is going to be relevant not only to a biological parent, but also to a non-biological parent. Thank you, counsel. The case just heard will be submitted. The next case on the oral argument calendar is Rios Palacios v. McKaysey.
judges: Trott, Thomas, Hogan